May it please the Court, Michael Carvin for Appellant Thomas. The District Court in this case found that a county attorney acting in his official capacity had no standing to challenge a judicial system that was biased against his office and was also racially segregated. We submit he did so on the basis of a semantic distinction that is illogical and contrary to law. In other words, the District Court seemed to agree that the government litigant itself had standing to challenge both its own due process violations as well as under jury discrimination cases the racial segregation. And the appellees conceived here that when an official is sued that the official in his official capacity is identical to the government he represents. So the only disputed remaining question in this case is whether or not that same identity of interest applies when the official is suing, bringing suit. We think the answer to that is clearly yes for a number of reasons. In the first place, obviously, there's just no logical reason not to have identity of interest when the official is the plaintiff rather than the defendant. If the official, when analyzing whether or not he's violated criminal defendant's due process rights, is considered the same as the government, it follows logically that he should be considered the government when the issue of the office's find an identity of interest between the official and the government when they are plaintiffs rather than when they are defendants. Because if you think about it, if you find an identity of interest when the government official is the defendant and has the same protections as the government, that means you've extended the sovereign immunity and damages case. The result of that, of course, is that you are keeping credible constitutional cases out of court. Now, courts are obviously reluctant to do that, to extend sovereign immunity such that viable constitutional claims can't be brought. But that argument would only apply as to the state of Arizona, correct? You mean in terms of sovereign immunity? Well, obviously, there are a number of qualified immunities that apply even at the county level. Right. But I mean, in terms of breaking down your argument, it's hard for me to see how you can stand in proxy for the state of Arizona when the attorney general would be the logical person, if anybody. You can't have your office, for example, taking one position, somebody else taking another position on behalf of the state of Arizona, because theoretically another county who has some interest in these courts could try to assert it. I don't see how you can bind the state of Arizona as a representative plaintiff. Well, because the Arizona State Legislature delegated to the county attorney the ability to act on behalf of the state of Arizona in these criminal prosecutions, including these DUIs. Right. But this is not a criminal prosecution. No, it is. It's a DUI for felonies, and that's why the captured state of Arizona And no, I mean this action. You're not prosecuting anybody here. Oh, right. But our argument is that the courts have created a barrier to the county attorney's ability to further the interest of the state of Arizona in these cases. No, I understand your argument as a Maricopa County, but it really is difficult for me to see, absent the attorney general joining you, that you can bind the state of Arizona to an affirmative suit. If that were true, then each, it seems to me, each county could take a different position on this. Well, I think Arizona's legislature contemplated that, and in the same statute that they cite, 41-193-4, it says that the attorney general exercises supervisory authority over the county attorneys. So if there were this kind of inter-county conflict, obviously the attorney general could bind it. But there's nothing in the Arizona There's nothing that talks about conflict in that statute, though. It's pretty clear that the attorney general supervises the, on behalf of the state of Arizona, county attorneys, right? Yes. Yeah. And so he, and so, but with the statute, the same So why isn't the, why isn't the attorney general the proper party to bring an action on behalf of the state of Arizona if you're going to challenge any of this? Because, again, in this context, when you're enforcing state laws in counties, the Arizona legislature has said that the county attorney is the responsible authority subject to the supervisory exercise of the attorney general. There's nothing in the Do you have a delegation from the attorney general to act in this case on behalf of the state of Arizona? No, we have a delegation from the Arizona state legislature I understand that argument. I'm just asking you specifically, has the attorney general weighed in in this case or not? No. And that's my entire point. There's nothing to suggest that the Arizona attorney general is the exclusive person that can represent. If that were true, he would be representing Judge Mondale, who's a state officer. So the notion that the attorney general is the only one that can appear in Federal court representing the state is wrong as a matter of state law. I would also point out Let's assume for the sake of argument, the attorney general issued an order to your office saying, we don't agree with your position, you are not authorized to represent  My position in that hypothetical would be that you need to read the Arizona I would assume that the attorney general would be exercising the supervising authority in those circumstances. And the fact that he hasn't issued such an order obviously shows that we haven't violated anything that he views as improper. In other words, you would have to follow. I would assume so, yes. But again, the fact that there's a million assistant attorney generals that show up in Federal court every day, but they don't have a specific authorization from the attorney general saying, bring this suit. But the fact that the attorney general has told them, not told them to stop the suit, obviously carries with it the necessary implication that he's exercising supervisory responsibility and he's perfectly happy with it. Are you talking about the United States? Actually, there is quite a sophisticated level of approval required. Yes, those are in Justice Department regulation. What I'm saying is you have the exact parallel in the Arizona State legislative scheme, which assigns to the authority to act on behalf of the state of Arizona in prosecuting these DUI cases. Since that is what is at issue here, since that is the relevant due process right that's been deprived, he is obviously the one that in the first instance is supposed to carry it out, just as the assistant attorney general for civil rights would be the one to bring something if a judge denied their due process rights in a civil rights case. And the fact, I don't think this court in any way can presume that the Arizona attorney general disagrees on the basis of silence. If you did, the fact that he's not sitting at that table would suggest to you that he doesn't agree with Judge Mondello's position. The question is not a standing necessarily whether he agrees or not. The record is clear. Yet the attorney general at this point hasn't taken a position. But if there's ambiguity on this, obviously this is a 12 v. 6 proceeding. This Court has made it clear that it liberally construes standing requirements, particularly in civil rights cases, and it therefore would be wholly unwarranted to delve into the statutory issue that was raised on the first time for appeal and find that that somehow disables us from asserting that there's no Article 3 case or controversy. If I understand your argument, the county attorney represents the state because the state told the county attorney to prosecute cases, criminal cases. Fair enough. So you take the position that it's not only bringing the person in, trying the lawsuit, and hopefully convicting and getting them sentenced, but that you have an organizational responsibility that has been delegated to you. That is to say, if there was a general jurisdiction in your county and judges decide they want to have specialty judges for criminal cases, that you could, on behalf of the state of Arizona, object to that because you believe that organizationally you're better off with generalist judges. That's your position. That anything that rises to the level of constitutional violation in the exercise of his statutorily assigned responsibilities, he's the relevant legal officer. If tomorrow the Maricopa County Court judges created a whites-only court, or tomorrow said that recent citizens from Mexico can't serve on juries at all, in the cases that the county attorney is prosecuting on behalf of criminal state laws, I can't imagine who else would have standing to bring that. Well, lots of people would. For example, someone who is a defendant who wants the benefit of the better court or the better program would clearly have standing. Well, if they have standings, then I would argue the people on the other side of the V also have standing. And I would make the point that obviously jurors have standing to challenge on the basis of race under Carter v. Green County Commission. But the Supreme Court made it clear that the fact that the jurors ---- Your position then is in a Batson case, all 50 people who have been called for jury service also can bring those claims, not just the defendant who asserts that there was a racial case of a peremptory challenge. Yes, in the Carter case. In fact, they dealt with this when they found the standing. Remember, this court held on Boncombe v. Gross that if a criminal defendant objects on racial basis to a black juror, that prosecutor has standing to vindicate his own injury because, as these cases make clear, that kind of racial discrimination, even with ---- If that's the application in a specific case, it seems to me there is at least potentially a logical distinction because an attorney general or a prosecutor is charged with carrying out the law, whatever it is. And if that person thinks the law is unfair, unjust, whatever, is it your position that they then have not only the opportunity to carry out the law, but also to challenge it? No, I think there's two things. If the law disadvantages them, I don't think this is disputed. We argue that Judge Mundell is biased against this office because she's not imposing the kind of probationary sanctions that this office advocates. And not only is it disputed that they have a due process, it's axiomatic that they have standing to wait for a due process. Is there a recusal opportunity under your statutes in your State? Well, again, I think we are essentially challenging this. I didn't say yes or no. Is there a recusal opportunity under the procedures in your State? I frankly don't know. We didn't pursue the course of asking for individual recusals in each of these cases because these are probationary cases. Wouldn't that ordinarily be the way that one deals with a judge who's biased against a particular prosecutor or defense lawyer? No, I don't think so in a systemic case. For example, there's the case of Toomey v. Ohio where there was a systemic and also Gibson v. Berryhill where there was a systemic due process violation because they had an interest in the cases. They had a financial reward. And in Gibson they allowed a 1983 suit to go forward against optometrists, and in Toomey they allowed it to go against a judge. So, no, I think the way to deal with these systemic kind of biases, for example, if you said, well, I don't know, public defenders could also serve as judges, I don't think you make individual recusal motions. I think you argue that there's a systemic problem here that we seek to eliminate. But systemic bias is not a Federal issue. That's a State issue. You're talking about structural. I mean, you're getting a little far apart from the establishment of court. You said you have a bias against your office. That's not a Federal issue. No, yeah, due process, absolutely. Again, Gibson v. Berryhill and Toomey v. Ohio. If somebody is wearing two hats, in this case the proponent of the segregated system and also adjudicating the cases, that's exactly the kind of inherent institutional bias. We're not arguing that there's some personal inferiority. What if a judge thinks that sentences are, say, really much too low for a certain kind of crime and through what they say they get much higher penalties passed by the legislature? Does that mean that the defense lawyer can come into Federal court and say there's a structural problem as distinct from just recusing that judge when the defense lawyer appears before him or her? Again, we're not talking about individual bias in a particular case. We're talking about somebody who established the system. Well, that's why I used the hypothetical I used of someone who brings about the very change that is not good for the clients of the lawyer. Oh, if they were administering the new sentencing guidelines and sitting as a judge to apply the system. Do you think that's a Federal due process claim? Yeah, and again, this is 12b-6, so we're not getting into the merits. The question is whether or not if there were something that everybody palpably would agree to use the most extreme circumstance if they made the criminal defendant the judge. Under this standing analysis, we couldn't come to court to protest that. Because we haven't gotten to the merits, the question is whether, assuming everything we say is true on the merits, can we get into court to raise it? And I submit that it's an extraordinarily absurd closing of the courthouse doors to say that people who are alleging systemic bias, racial bias in the system, and systemic bias in terms of the office are not even able to do it. If Your Honors think that we're not going to prevail on the merits, that's fine. But let us at least have the opportunity to make this case. Because let's not go off on standing. Which is the injury, in fact, in this case? Well, the injury is precisely, in fact, it's way more powerful. In what case are you injured? I'm sorry, in all the cases. Because segregation by itself infects the entire system. Is this court held in DeGrasse and is the Supreme Court held in Georgia v. McCowan? And in those cases, they were talking about racial discrimination against a single juror. Here we are talking about a systemic situation where you are ascribing, segregating certain people to certain courts. We are in exactly the same boat as the criminal defendants. And I think Judge Graber indicated before that the defendants would have systemic. Excuse me. You used the phrase that they're going to a different court. But isn't it really a probation program after conviction and all that has already occurred in a regular, ordinary-for-everybody court? No. I mean, I'm sorry. It is a court with a judge. Well, wait. Everybody who's in the program that you are challenging has already been convicted, correct? Right. Okay. Okay. So in the process of achieving that conviction, did they not go through a court that is open to all up to the moment of conviction? Well, it would depend. The vast majority of these people plea bargain. So they never actually went through. So the only good thing. It's the same court, though. Yes. No. I want to make clear that I'm not disagreeing with you. This is the probationary part of this tradition. When conviction is obtained all the way up to the point of conviction, there's no segregation of the kind that is expressed. It's only with respect to the judicially supervised probation that the segregation occurs. Okay. So it's the probation. It's the terms of the probation program. It's not the process of obtaining the conviction in the first place. You're right. But, of course, probation has many instances where if they don't live up to their probationary requirements, they're remitted to jail or their sentence is enhanced or they've got to fill out their full sentence. So, obviously, probation is a very important part of the judicial system. I think it's a different part, Judge Greger's question. Oh, I think it's different. I'm not saying it's not important. It's different from the proceedings that lead up to the criminal conviction. Absolutely. And I'm just saying. So let me tease this out a little bit further. Is it okay to individualize the terms of probation? In a non-racial way. Okay. Yes. The problem here is that they're grouping all Native Americans and Hispanics together. I don't think anybody would suggest that they said, well, whites go to one court and blacks go to another court in Mississippi. Even if it was just for the probationary period, we would all say, well, they got 80 percent of the criminal justice system was nondiscriminatory, but now we're going into a segregation system. We can't segregate, as this Court well knows, in prison cells. So the notion that you can segregate one part of the judicial system is, I would argue, contrary to basic 14th Amendment principles. But I would reiterate, that's all for us to argue in the district court below. So all of these distinctions on the merits are well ahead of the game. If the system had been precisely as you described, that from the get-go, from the time they are arrested until the time of probation, they are in a racially segregated situation where blacks are in one system and whites are in another. Under this analysis, we would not be able to get to court. And that's what I'm urging on this Court, is not to accept. If the Court is skeptical of the merits argument, fine. Let's get to it. But don't issue some standing ruling that closes the courthouse doors to people who are alleging fundamental constitutional rights on a theory that turns on that government has certain rights, but county officials don't. Kennedy. Well, I understand that the idea of standing is one that's sometimes registered with closing the court doors, but there's the document called the Constitution which interferes with that theory. I would like to have you go back to Judge Thomas' question of where is the injury in fact, and have in mind the analysis that I'd like to have you make in that, is whether or not the injury in fact is personal to the county attorney or whether it's organizational to the county attorney, and does that make a difference? I think we need to be very careful with our semantics here, because I think the district court got confused on this one. When I say personal, I mean as opposed to on third persons. So, yes, it's the office's stake. But are we arguing that Andy Thomas as a citizen has this? No. It is him in his official capacity. And he is representing a litigant who, as we say, is being subjected to a racially segregated system. So you agree it's official? Oh, yes, absolutely. And, of course, we've pled that from the beginning. In the complaint it says in his official capacity, as I say. But there are standing cases that say you need a personal stake as opposed to asserting the stakes of somebody else. And I just wanted to make sure that you weren't confused on that point. We're not arguing that he's a ---- Actually, that segues into the South Tahoe case. How do you distinguish that? Oh, well, South Tahoe is very clear. That was a situation where the officials were enforcing a law against the third person that they didn't like. They weren't being subjected to a policy that they didn't like. They were saying, we don't want to take this person's property. We don't want to tax these people unequally. And they said, well, the court said, that's just qualms about the Constitution. They've got to suffer injury. That South Lake Tahoe would prevent employees of the appellate's from bringing suit, but it doesn't prevent a litigant in front of the court who's being shuffled involuntarily into this segregated system and who's being biased against. We're not arguing some qualms of conscience. We are arguing tangible injury and getting the kind of probation violations we think are appropriate. That goes to your third party representation issue. Yes. I just want to make it clear. We are alleging personal injury, and I would repeat that in United States v. DeGrasse, even when you were talking about a criminal defendant exercising a racially discriminatory peremptory challenge, this court found en bas that the prosecutor had standing to raise his own injury. Even though the racial discrimination was hardly visited on him at all, it was visited on the jurors, they found that there was personal injury. I would argue a fortiori. If these people are being subject to a segregated system, it's no different than the criminal defendants who are being subject to the segregated system, and I think everyone has agreed that they would have standing. So unless you buy this semantic distinction between the government as litigant and the county official as a representative of the government litigant, I think it's essentially conceded, as the district court did, that the government has standing to raise these equal protection and due process claims. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the court, my name is Scott Claus, an appointed special assistant attorney general of the state of Arizona, representing Judge Barbara Mundell, Judge Carrie Hyatt, and Commissioners Blomo, Notware, Lynch, and Anderson. I take it you're not here representing the state of Arizona? I am here as special assistant attorney general. I understand that point, but then you said representing, and you had a list, but the list didn't include the state of Arizona. I'm just wondering whether the state of Arizona is now coming in as amicus or otherwise, or whether you're specifically just representing those individuals. I'm representing them in their official capacities, Your Honor. I'd like to start off by way of introduction, by highlighting what we're not here to discuss today. We're not here to discuss criminal prosecutions. We're not here to discuss adjudications of a criminal defendant's right. We're not here discussing proceedings involving the introduction of evidence, the cross-examination of witnesses. These proceedings are not even record proceedings. Judge Graber raised an excellent point. There is a specific provision in the Arizona Rules of Criminal Procedure, Rule 27.8, for probation, revocation hearings. They are separate proceedings held on the record in English. The programs we are talking about today are post-conviction, post-incarceration, post-sentencing adult probationary treatment programs, in which the county attorney,  has no powers or duties. He certainly does not have a legally protected right in those proceedings, sufficient for him to demonstrate the irreducible minimum of an injury in fact, such that the district court could find Article III standing. As county attorney in his official capacity, City of South Lake Tahoe provided a per se bar on Mr. Thomas' attempt to assert standing. Pursuant to South Lake Tahoe, his role as county attorney, he simply can't assert a concrete, particular, individualized, and this gets to Judge Thomas' question, following up on Judge Wallace's question. The United States Supreme Court in Lujan was crystal clear. Justice Scalia, when explaining what he meant definitionally, by the word particularized, meant an individual's concrete, highly personal, highly individual interest. The appellants have conceded that no such interest is before the court today. Thus, they simply cannot, under City of South Lake Tahoe, establish the requisite injury in fact. But getting to some of your questions, due to the nature of the probationary programs at issue, and due to Mr. Thomas' participation, or in fact the participation of members of his office, the fact of the matter is that Mr. Thomas not only cannot, because of City of South Lake Tahoe, but does not suffer any injury in fact, as a result of these probationary programs. Under ARS section 11-253, it is not the county attorney who has the powers and duties over these probationary programs. It is the chief adult probation officer. Under ARS 11-253, it is not the county attorney who has the power to even request a petition for probation revocation. Rather, that duty is conferred solely upon the chief probation officer of the county. The adult surveillance officer, under ARS 11-259, has the sole power to collect that probationer, who the adult probation officer finds has violated the provisions of probation, such that that separate probation revocation proceeding is initiated in a separate court, on the record, in English. The per se prohibitions by South Lake Tahoe, and then reapplied and extended by this court in Palomar, Pomerado, in Okanagan, in the Bakersfield Regional Airport Authority, are clear. Political subdivisions of a state can't sue the state, or another political subdivision of the state, or an officer of that subdivision in federal court for a constitutional violation. And a public official, such as Mr. Thomas, has absolutely no standing to sue the state, a political subdivision of the state, or a state officer in federal court. So what has Mr. Thomas done to avoid those per se prescriptions? First, he's attempted to convince this court that he is actually a, quote, litigant, end quote, in the cases in which he appears on behalf of the state of Arizona. That position is so filled with error, it is hard to know where to begin to offer a rebuke. Mr. Thomas is not a litigant in any case in which he or a member of his office represents the state of Arizona in a very limited, statutorily and constitutionally limited way. Mr. Thomas's only duties under the Constitution are those granted to him by the legislature. The legislature has granted him the authority to represent the state in criminal prosecutions in the county in which he is the county attorney. That is it. These are probationary programs. They are not prosecutions. This case is not a criminal prosecution. It is not a probationary program. Instead, Mr. Thomas has sued the state. And so what is the next way in which he attempts to avoid the prescription of South Lake Tahoe and its progeny? Well, you heard it here today. Mr. Thomas has suddenly become the state. But, again, that demonstrates either a willing mischaracterization or a surprising misunderstanding of Arizona's Constitution and statutory scheme. Under Arizona's Constitution, Article 12, Section 3, the Constitution created Mr. Thomas's office. Article 12, Section 4 explicitly limits his powers. According to the Arizona Constitution, which delegates the power to the county attorney, Mr. Thomas has no common law powers. He has no powers other than those specifically delegated to him by the legislature. And the legislature has delegated to Mr. Thomas no power to sue the state officers he is suing in federal court. In fact, Mr. Thomas does not even have the power to initiate a suit in any court on behalf of the county. According to ARS Section 11-201, the sole authority to initiate suit on behalf of the county is vested with the county board of supervisors. The board of supervisors has not authorized this suit. Mr. Thomas's assertion that he may unilaterally sue on behalf of the state ignores ARS 41-192A. The power, it is explicit, it is crystal clear, it is in simple English. The power to represent the state in federal court is solely and wholly vested in the Arizona Attorney General. The Arizona Attorney General has not authorized this suit. Mr. Thomas then suggests that he's not, in his reply brief and somewhat today, he then tries to suggest that, well, he's not actually suing the state, but he's suing a, quote, co-equal branch of government. Again, as the county attorney, it is surprising to me that he has such a categorical misapprehension of how Arizona's courts are arranged under the Arizona Constitution. The Maricopa County Superior Court is not a county court. It is a court of the state of Arizona. Article 6, Section 1, establishes the judiciary of the state of Arizona, and, quote, the judicial power of the state is vested in an integrated judicial department consisting of the Supreme Intermediate Appellate and Superior and Justice Courts. Article 6, Section 13 is even further clearer. The Superior Court shall constitute a single court of this state. The defendants in this case, the judges and commissioners, are state officials. They are not county officials. They are not creatures of the county. Rather, the Constitution, under the state judiciary creation, created the defendants' offices as officers of the state. So, under the principles recognized in South Lake Tahoe, by suing those officials, he is suing the state without the state's authority, without any delegation of power to sue the state by the Arizona Constitution, without the delegation of any power to sue the state by any Arizona statute. He is doing it improperly. He is doing it without authority. And he is doing it, apparently, in a fit of pique, to satisfy some personal and, truth be told, some patently political motive. And this gets to the policy reason underlying judgment. That actually isn't relevant to our considerations, is it? It is. Well, what if someone has a completely legitimate constitutional claim and they also can't stand the defendant and they've been political opponents in the past? Does that make the lawsuit any less sustainable, passed a motion to dismiss? Your Honor, the answer to your hypothetical question is no. But the answer to your first question is no. The answer is, if he has standing, it doesn't matter why he's bringing the suit, right? And if he lacks standing, it also doesn't matter why he's bringing the suit. But the reason he does not have standing under South Lake Tahoe is explained by Judge Wallace vis-à-vis the political motives of county officials. There are 15 counties in Arizona. There are a minimum under the Constitution of nine elected county officers. My concern with your argument is that it seems to suggest that if someone in another county had a pure heart, they could bring this case and get Article III standing. Oh, no, Your Honor. And so I guess I'm at a loss to understand why it matters what his personal thoughts are for why he started this road. It matters to underline, rather, the policy reasons behind Judge Wallace's decision in South Lake Tahoe. Those 135 county officers and all of the individuals who work with them under Mr. Thomas' rubric would now be suddenly imbued with the power to bring suits in federal court against the state as private attorneys general or as attorneys general. And it's that very policy that served as the principle for why Judge Wallace determined that inferior public officials cannot, on a whim or because of political motivation or, as he recognized in South Lake Tahoe, grounded on an apparently principled reason. The reason does not matter in the concrete, but the policy is highlighted and illustrated by the fact that there are at least 135 similarly situated individuals to Mr. Thomas who, under his view of the world, could go into federal court any day of the week. And because they disagree with a program of the state, they could initiate suit in federal court because they disagree with that program. And that's precisely, precisely what City of South Lake Tahoe stands against. Because I only have a minute left, I'd like to address the third-party standing issue and the individual plaintiffs, if possible. Again, the third-party standing issue was addressed specifically in footnote 8 in City of South Lake Tahoe. The city council members in South Lake Tahoe attempted to assert, standing on behalf of the landowners, that were affected by the regulation, but because of the abstract injury that is a required conclusion due to the official capacity of Mr. Thomas's office and the official capacity of Mr. Thomas's suit, he cannot satisfy the first element of third-party standing, which is to show an injury, in fact, that is personal and individualized to him. My question is how you distinguish this situation from the so-called conscription cases. In those cases I'm thinking about are cases, some of which standing wasn't distinctly analyzed, but like, for example, Prince versus the United States, which was a county sheriff who sued to enjoin enforcement of the Brady Bill, the Brady Bill specifically the provisions that required county sheriffs to administer that portion. Now, the Supreme Court didn't talk about standing, but it also didn't seem to have much difficulty in allowing the suit. Well, I have two answers to your question, Your Honor. First, a principle that was announced or at least recognized forcefully by Chief Justice Marshall, that when an issue is passed on by the Supreme Court, especially an issue that goes to subject matter jurisdiction sub silencio, it cannot be deemed as a binding precedent. So that is a procedural response. But the substantive response is that in those cases, Your Honor, it was not a county official suing the state. It was a county official just like LaDuke. It was a public official suing a federal officer. Why is that in principle any different in the sense of essentially part of the theory of South Lake Tahoe is that a public official is charged with administering the law, and then enacting in an official capacity is not aggrieved by the law itself. To answer your question, you have to go back to Smith versus Indiana and the line of cases following Smith, but also the younger doctrine. First, Mr. Thomas exists in his official capacity because the state allows him to do so. The principle behind Smith versus Indiana and the line of cases leading to South Lake Tahoe and beyond, to Okanagan, to all of those cases that have been recognized by the Ninth Circuit and has been denied in all of those cases, recognizes that an officer whose office is created by the state, cannot have any power unless given by the state to sue the state in federal court. And secondly, Your Honor, the younger doctrine. This court and the Supreme Court, all federal courts, have to be especially wary of the delicate balance between the federal judiciary and the state's governance of its own internal affairs. And so that's the answer to your question, Your Honor. Any further questions? Thank you for your answer. Thank you, Your Honor. We'll give you two minutes for rebuttal. I'd like to begin by correcting the misconception upon which Appelli's argument is based. We're not trying to evade South Lake Tahoe. We embrace it. South Lake Tahoe made it quite clear that the city officials, county officials' standing in their official capacity was precisely the same as the county itself. That's what we're arguing. They seem to concede that the government litigant here has standing, just we have the wrong lawyer bringing the case. Well, just as because the county didn't have standing in South Lake Tahoe, the officials didn't have standing, vice versa. Since the county or the state would have standing here, then the county official responsible for implementing that also has it. As to the notion that we are somehow suing our creator, they don't understand the Arizona Constitution. Judge Mundell did not create the office of county attorney. The state constitution did. You have never, ever applied, nor has any other court applied this notion of South Lake Tahoe to when a prosecutor challenges what a judge does. And I would argue it would be extraordinary for the court to say that prosecutors don't have rights vis-a-vis the judicial system. In mandamus cases, grand juries, all kinds of due process cases of the sort we talked about before. The idea of South Lake Tahoe is you are our creature. You have no rights vis-a-vis us. You can't turn on us like a Frankenstein monster. The state can't injure itself. But it's clear as a bell that judges can injure litigants' interests, including prosecutors, and that prosecutors have rights vis-a-vis judges. So it can't possibly be that this court would ban a lawsuit if the county said from now on the county attorney will lose every case. Or that every white defendant will go free. Well, that is the astonishing position that they are presenting here. Because they are saying under no circumstances can a judge, prosecutor challenge what a judge does regardless of the circumstances. And again, if they're worried about the application of this on the merits, let's deal with it on the merits. In terms of all of these new statutory arguments, many of which were made for the first time today, the fact remains that the only persons in an adversarial system representing the people of Maricopa County in Arizona are fully entitled to be at these probationary hearings to assert the interests of the people. It is true, of course, that the probation department gives the judge the recommendations on what to do, and it's the probation department that acts, if you will, as judge. But the notion that we don't have the ability to make our views clear on what these convicted felons should be entitled to in terms of prison times is mind-boggling. Under that theory, they could ban us entirely from the hearings. And we would have no right to say anything about it because we have no right to be there in the first place. They didn't make this argument to the district court. It is facially implausible and facially wrong. Thank you. Thank you, counsel. Thank you both for your arguments and your briefing. The case, as heard, will be submitted for decision. We'll proceed to the argument on the next case, which is Metropolitan Transportation Commission v. Motorola. And for the benefit of counsel, we'll take a short break after the argument of this case. Thank you.
judges: Wallace, Thomas, Graber